**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MICHAEL K. PRATT, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 13-2451-JWL |
| CAROLYN W. COLVIN, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.   Background**

Plaintiff applied for SSD and SSI, and at a supplemental hearing alleged that his disability began July 28, 2006.  (R. 23, 97, 278-87).  In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision

denying benefits. He alleges the Administrative Law Judge (ALJ) failed to follow the treating physician rule and erred in evaluating the credibility of Plaintiff's allegations of disabling symptoms. The Commissioner argues that the ALJ performed a proper credibility evaluation and properly considered and weighed the medical opinions. The court finds no error.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Credibility

Plaintiff claims that the reasons given by the ALJ are insufficient to support his negative credibility finding.  He argues that he testified regarding limitations and his testimony is consistent with the record.  The Commissioner argues that the ALJ's credibility rationale is supported by substantial record evidence and that it is irrelevant that "other records could hypothetically support a different finding."  (Comm'r Br. 5).

The ALJ adopted the rationale and credibility analysis provided by another ALJ in an earlier decision in Plaintiff's case to supplement his rationale and credibility analysis. (R. 31) (citing Exhibit 3A, pp. 10-11 (R. 147-48)).  In the earlier decision, the ALJ found that Plaintiff's allegations of symptoms are not credible.  The court has identified seven reasons given in the earlier decision to find that Plaintiff's allegations are not credible. (1) Plaintiff testified that he has back spasms which cause him to lose his balance, but the ALJ noted that he must not have reported this to his treating physicians because the allegation is not included in the medical records.  (R. 147). (2) Plaintiff testified that his pain has been constant since its onset in December, 2005, but the record evidence at times reveals reports of improvement in the level of pain.  Id.  (3) Plaintiff testified that activity

4

worsens his pain, but on several occasions he told Dr. Hempstead that walking, home exercises, and activity helped relieve his pain. (R. 148). (4) In August, 2008 Plaintiff told Dr. Nadler that his pain was improving due to injections and therapy, while at the same time telling Dr. Hempstead that his pain was markedly worse. Id. (5) While Plaintiff testified that he was unable to perform most household chores, he and his roommate both reported that Plaintiff "keeps the house tidy, does laundry, and food shops." Id. (6) Plaintiff reported on several occasions that he was walking two miles a day. (7) In March 2008, Plaintiff requested that one of his physicians "provide a letter regarding the claimant's mental ability to rejoin the Air Force which attests to the claimant's belief in the improvement in his condition." Id.

The ALJ provided a discussion of Plaintiff's credibility in which he provided three additional reasons to find Plaintiff not credible:

> Much of claimant's testimony was exaggerated or embellished to make him appear more functionally limited that he actually is. For example, [(8)] he testified that he has used his cane "constantly" since 2006 "just about every time he has been upright." However, following an office visit on April 23, 2008, Dr. Hempstead noted that claimant was ambulating without his cane (Exhibit 5F/20). At that same visit, Dr. Hempstead noted that claimant reported he was walking 2 miles a day, which is extremely inconsistent with his testimony pertaining to how far he has been able to walk since his alleged onset date (Exhibit 5F/18). [(9)] There is nothing in the record to show any medical need for claimant to lie down most of the day as he testified. [(10)] He testified that he only does a very limited amount of activities of daily living, such as limited cooking and washing dishes, and that he receives help from family members to do the rest. This might be true, but his lack of performing more activities of daily living is certainly not due to his medical impairments. There is nothing in the record of evidence to show that claimant cannot perform sedentary work with the additional restrictions set forth in his residual functional capacity.

5

(R. 33) (numbering added).

Plaintiff argues that the ALJ's rationale "focuses largely on the fact that Plaintiff had periods of improvement," but did not consider whether Plaintiff could hold a job for a significant period of time. (Pl. Br. 18-19). Plaintiff's argument misses the significance of the ALJ's rationale. The significance is not that Plaintiff reported improvement from time to time, the significance of the credibility analysis is that Plaintiff's testimony was not consistent with his reports to his physicians or with the other record evidence.

Plaintiff's second argument is by no means clear, but he appears to be arguing that the record evidence demonstrates that his degenerative disc disease of the lumbar and cervical spine is the basis for his need to lie down most of the day, and that the ALJ did not show any other basis for his limited activity. As the ALJ noted, although the medical evidence establishes that Plaintiff has degenerative disc disease of the lumbar and cervical spine, it does not contain any suggestion by any physician that Plaintiff must lie down most of the day. Plaintiff's argument that the ALJ did not show any other basis for Plaintiff's limited activity ignores that it is Plaintiff's burden to show his limitations, it is not the ALJ's (or the Commissioner's) burden to show that Plaintiff is not limited.

Plaintiff next argues that the ALJ erred in adopting the earlier decision's finding that he does not have balance difficulties, when the current decision admits that he has balance difficulties and when the record evidence shows balance difficulties. Once again, Plaintiff misunderstands the decision. The earlier decision did not find that Plaintiff does

not have balance difficulties. Rather, that decision noted that Plaintiff testified that he had back spasms so bad that they caused him to lose his balance, but he did not report such problems to his physicians. Plaintiff does not demonstrate error in this finding. Although he points to a single treatment note reporting "difficulty with balance" on a "review of systems" (R. 642), he does not point to any evidence that he told his treating physicians that he has back spasms so bad that they cause him to lose his balance. Moreover, the fact that the ALJ assessed a restriction to jobs that only require balancing occasionally does not detract from the inconsistency between Plaintiff's testimony and his reports to his physicians.

Finally, Plaintiff points to reason number four in which the ALJ found that in August 2008 Plaintiff made inconsistent reports--of improvement with pain to Dr. Nadler, and of severe worsening of pain to Dr. Hempstead. He cites to record evidence in support of his assertion that in that month he had a painful flare-up in his pain. In this assertion, Plaintiff is correct, for although Dr. Nadler's August 14, 2008 treatment note states that "[o]ver the past 8 weeks, the patient has been treated with a series of caudal epidural steroid injections with continued improvement," it also states that Plaintiff "had been doing well up until about 3 days ago." (R. 539) (underlines added). Therefore, out of ten reasons the ALJ gave for finding that Plaintiff's allegations are not credible, Plaintiff has shown that one of those reasons is equivocal in suggesting incredibility.

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d

585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Although the court has some concerns regarding the ALJ's reliance upon this factor, it concludes that "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record," and any error in the credibility determination is harmless in light of the nine other reasons relied upon, and given the deference such a determination is due. Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

**III.   Evaluation of the Medical Source Opinions**

Plaintiff argues that, contrary to the ALJ's finding, the treating physician, Dr. Hempstead, properly supported her opinion and it is "uncontradicted by other substantial evidence in the record," and the ALJ should, therefore, have given it controlling weight. (Pl. Br. 16). He argues that the ALJ ignored the regulatory factors--that Dr. Hempstead treated him for four years, that the treatment was focused on disabling musculoskeletal

impairments, that "Dr. Hempstead provided appropriate medical support for her opinions," and that the physician's findings are consistent with the MRI evidence in the record, as well as the clinical examinations. Id. at 17. And he argues that it was error for the ALJ to accord "substantial weight" to the opinion of Dr. Raulston, the medical expert that testified at the hearing, because generally the opinion of "an agency physician who has never seen the claimant is entitled to the least weight of all [medical sources]." Id. at 16 (quoting Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)).

When discussing the record evidence, the ALJ incorporated into his decision the summary of the medical evidence provided in the earlier decision in this case. (R. 31) (adopting the medical evidence summary at Exhibit 3A, pp. 8-12 (R. 145-49)). Moreover, he also provided a summary of additional portions of the medical evidence. (R. 31). He discussed the medical source opinions in the record evidence and explained the weight accorded to each. He accorded "some weight" to the "other medical source" opinions of Dr. Vifquain, a chiropractor who treated Plaintiff, because although Dr. Vifquain is not an "acceptable medical source, his opinions are "consistent with the substantial evidence of record." (R. 31).

The ALJ accorded "substantial weight" to Dr. Raulston's opinions because "he is an orthopedic specialist and because his opinions are consistent with the medical evidence and the other substantial evidence in the record." (R. 33). Despite that Dr. Raulston opined that Plaintiff could work at the light exertional level, the ALJ gave "the benefit of

the doubt to claimant and finds that his DDD [(degenerative disc disease)] limits him to sedentary work with additional restrictions."  Id.

The ALJ summarized the treating source opinion of Dr. Rausch who opined that Plaintiff is unemployable, and accorded it "little to no weight" because it is on an issue reserved to the Commissioner and provides "no meaningful functional limitations."  (R. 34).  Finally, the ALJ accorded "little weight" to the functional limitations opined by Dr. Hempstead, Plaintiff's treating family physician "because they are not supported by the objective medical evidence in the record or the opinions of Dr. Raulston, an orthopedic specialists."  Id.

As Plaintiff's argument suggests, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[1] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c) (effective February 23, 2012); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014). A treating source who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), and Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2014) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. <u>Id.</u> "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end. <u>Id.</u> A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ rejects the

12

opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Plaintiff's argument that Dr. Hempstead's opinion should have been accorded "controlling weight" because it is uncontradicted by other substantial evidence in the record is without merit.  SSR 96-2p, cited by the court in Watkins, explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2014).  As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  Dr. Raulston is a physician whose specialty is orthopedics and who is familiar with the Social Security Administration's regulations and Listings regarding disabling impairments.  As such, his opinion regarding the limitations resulting from Plaintiff's musculoskeletal impairments is just such evidence as a reasonable mind would accept to support a conclusion that is contrary to the opinion expressed by Dr. Hempstead.  Therefore, it is substantial record evidence which is contrary to Dr. Hempstead's opinion, and precludes that opinion from being accorded "controlling weight."

His argument that the ALJ ignored ceratin factors with regard to Dr. Hempstead's opinion is likewise unavailing. As Plaintiff argues, an ALJ must consider the regulatory factors when weighing medical source opinions. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). The question is not whether the ALJ discussed all of the factors, it is whether the factors were considered in weighing the opinions. Here, the ALJ made clear the weight accorded to Dr. Hempstead's opinion, and the reasons for that weight. More is not required. Moreover, the discussions relied upon by the ALJ specifically address more of the regulatory factors than Plaintiff acknowledges. The ALJ acknowledged that Dr. Hempstead was Plaintiff's "primary care physician." (R. 145). He specifically noted that Dr. Hempstead had been treating Plaintiff "since January 29, 2008." (R. 34). Plaintiff cites no record evidence which establishes that the ALJ ignored any evidence relating to Dr. Hempstead's treatment.

Finally, Plaintiff's argument that it was error to accord "substantial weight" to Dr. Raulston's opinion because the opinion of an agency physician who has never seen the claimant is generally entitled to the least weight of all medical sources must also fail. To be sure, such an opinion is generally accorded lesser weight than the well-supported opinion of a treating physician, but here the ALJ found that Dr. Hempstead's opinion is not well-supported, and Plaintiff has not shown otherwise. The ALJ explained his

reasons for according "substantial weight" to Dr. Raulston's opinion, and Plaintiff has not shown error in those reasons.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 2nd day of December 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**